[No. B140917. Second Dist., Div. Three. Mar. 20, 2001.]

LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
VALERIE A. et al., Real Parties in Interest.

1162

**COUNSEL**

Lloyd W. Pellman, County Counsel, and Jill Regal, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Peter Ferrera For Real Parties in Interest.

Law Offices of Lisa E. Mandel, David Estep and Nancy Aspaturian for Minors.

## Opinion

## ALDRICH, J.—

### Introduction

Welfare and Institutions Code[1] section 361.4, subdivision (d)(2) states that a "[dependent] child shall not be placed in the home" where the child would have contact with an adult who has been convicted of a crime, other than a minor traffic violation. The Los Angeles County Department of Children and Family Services (the department) has filed a petition for writ of mandate asking this court to vacate the order of the juvenile court placing nine-month-old Serena A. and four-year-old Richard A. with their maternal great-uncle and his wife because of the great-uncle's extensive disqualifying history of narcotics-related criminal convictions. We hold that the prohibition in section 361.4, subdivision (d)(2) is mandatory. We further hold that the statute does not otherwise provide the juvenile court with discretion to avoid a disqualifying criminal conviction. Thus, the juvenile court acted in excess of its authority in ordering the challenged placement. Accordingly, we grant the department's writ and direct the juvenile court to vacate its order.

### Factual and Procedural Background

The department filed a petition alleging the children are described by subdivisions (b), (g), and (j) of section 300 because their mother, Valerie A., has a long history of drug abuse, arrests, and convictions, and used rock cocaine during her pregnancy with Serena, all of which endangers the children's health, safety, and well-being.

The children were detained and the court ordered the department to conduct a pre-release investigation of the maternal great-uncle, Robert M., and his wife, Delores M., for possible placement of the children with them. (§ 319.) The investigation revealed, among other things, that Delores and Robert have been married for one year and are active in their church. Because Delores works outside the home, she made day-care arrangements for the children. Delores has no criminal record.

---

[1]Hereinafter, all statutory references shall be to the Welfare and Institutions Code, unless otherwise noted.

Robert, however, disclosed that he has a criminal record: it is believed he has 16 adult convictions for drug-related offenses, over the past 15 years, resulting in incarceration in both county jail and state prison. He stated he had a history of drug abuse until 1993. He had had a relapse in 1998, when he was arrested for driving under the influence of alcohol, although he has since recovered his driver's license. He also admitted to gang-related activities, "years ago." Robert is not in good health. He undergoes kidney dialysis three times a week for four hours a day and consequently does not work. He is also on numerous medications for high blood pressure, liver disorder, and renal failure. Because of concerns about Robert's criminal record, history of drug use, and health, the department recommended against the children's release to Robert and Delores.

Over the department's objections, the court ordered the children released to Delores and directed that Robert could only have monitored contact with the children and could not babysit them. In making its order, the court found that Robert and Delores were taking good care of the children and had been forthcoming about their situation.

The department filed an application for rehearing on the ground that the placement of the children in Robert's home violated the prohibition in section 361.4, subdivision (d)(2)[2] against placing children in a home in which is present an adult with a criminal record other than a minor traffic violation.

Instead, the court sustained the petition and ordered that the children remain released to Delores. The department filed the instant petition for writ of mandate.

This court issued a notice directing the juvenile court to change its placement order. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893].) Noting the children were

---

[2]Although section 361.4 was amended effective September 13, 2000, immediately after the selection and implementation hearing was held in this case, the changes do not affect the substantive result here. Section 361.4 provides in relevant part, "(b) Whenever a child may be placed in the home of a relative, or the home of any prospective guardian or other person who is not a licensed or certified foster parent, the court or county social worker placing the child shall cause a criminal records check to be conducted. . . . [¶] . . . [¶] (d)(1) If the fingerprint clearance check indicates that the person has no criminal record, the county social worker and court may consider the home of the relative, prospective guardian, or other child who is not a licensed or certified foster parent for placement of a child. [¶] (2) If the fingerprint clearance check indicates that the person has been convicted of a crime that would preclude licensure under Section 1522 of the Health and Safety Code, *the child shall not be placed in the home.*" (Italics added.)

receiving appropriate care with Delores, the juvenile court ordered Robert to move out of Delores's home and directed the department to verify that Robert had moved out.

After the department confirmed that Robert had moved, a social worker discovered Robert in Delores's house during a surprise 8:00 a.m. visit. Robert admitted spending all his waking hours at Delores's house, only going to his mother's late in the evening to sleep. Robert had moved his clothes back into Delores's house, took showers, ate all his meals there, and maintained unmonitored contact with the children, even driving them to day care. Robert and Delores stated that their marriage is intact and they planned for Robert to move back into the house when the juvenile proceedings terminate. Delores also stated, with respect to divorce, that she would do what was needed to protect the children's placement. Recently, counsel for the children reported that Robert had "voluntarily stopped transporting the children to and from daycare. . . ."

We issued an alternative writ of mandate directing the trial court to remove the children from Delores's home and/or to bar contact between the children and Robert. After the selection and implementation hearing, the department informed this court that the juvenile court had granted Delores legal guardianship over the children, again over the department's objection, but refrained from terminating its jurisdiction because of the pendency of the instant writ petition.

## DISCUSSION

*The juvenile court acted in excess of its authority.*

■ "The applicable principles of statutory construction are well settled. 'In construing statutes, we must determine and effectuate legislative intent.' [Citation.] 'To ascertain intent, we look first to the words of the statutes' [citation], 'giving them their usual and ordinary meaning' [citation]. If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." [Citation.]' [Citation.]" (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].)

■ Turning to the statute, section 361.4 directs, before placing dependent children in a house that is not a licensed or certified foster home, that the department conduct a criminal records check on all adults living in the

potential home, and on any other known adult who may have significant contact with the children, or who has a familial or intimate relationship with anyone living in the potential home. (§ 361.4, subd. (b).) The department must follow this records check with a fingerprint clearance check to ensure accuracy. (§ 361.4, subd. (d).) If the fingerprint clearance check indicates that a person described in section 361.4 has been convicted of a crime that would preclude licensure under Health and Safety Code section 1522,[3]—any crime other than a minor traffic violation—the statute states: *"the child shall not be placed in the home."* (§ 361.4, subd. (d)(2), italics added.)

The italicized language of section 361.4 subdivision (d)(2) is plain: the statute is mandatory. It is a well-settled principle that the word "shall" in statutes is usually construed as a mandatory term. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610].)

Section 361.4, subdivision (d)(2) does not confer on the juvenile court any discretion to avoid its prohibition. The section applies broadly to anyone involved in placement because the clause is stated in the passive form. That is, the phrase "the child shall not be placed in the home," lacks a subject with the result that it clearly forbids the juvenile court, as well as social workers and the department, to place a child with someone who has a disqualifying criminal conviction. " ' "[W]here . . . the language is clear, there can be no room for interpretation." ' " (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 121 [253 Cal.Rptr. 1, 763 P.2d 852].) The plain language of section 361.4, subdivision (d)(2) simply precludes the juvenile court from ignoring a disabling criminal conviction.

Although there is a provision in the statute allowing for a *waiver* of the disqualification, the power to grant a waiver *was not conferred on the juvenile court.* (§ 361.4, subd. (d)(3).[4]) According to the statute, "the county" may request a waiver from the *Director of the Department of Social Services* (DSS). The director has 14 days to grant or deny a waiver application based on the standards set out in Health and Safety Code section 1522, subdivision

---

[3]Health and Safety Code section 1522, subdivision (a)(1), provides in pertinent part that if an applicant for foster family home or foster family agency "has been convicted of a crime other than a minor traffic violation, the application shall be denied, unless the director grants an exemption pursuant to subdivision (g)."

[4]Subdivision (d)(3) of section 361.4 states, "Upon request from a *county,* the *Director of Social Services may waive application of this section* pursuant to standards established in paragraph (1) of subdivision (g) of Section 1522 of the Health and Safety Code. The director shall grant or deny the waiver within 14 days of receipt of the county's request." (§ 361.4, subd. (d)(3), italics added.)

(g)(1).[5] It has already been established that "[t]he plain language of both section 361.4, subdivision (d)(2), and Health and Safety Code section 1522, subdivision (g)(1), places responsibility for granting or denying the exemption *squarely* on the Director of DSS. The Legislature has made *no provision for delegation of this duty outside the DSS*." (*In re Jullian B*. (2000) 82 Cal.App.4th 1337, 1350 [99 Cal.Rptr.2d 241], italics added, fn. omitted.)[6] "[T]he statement of limited exceptions excludes others, and therefore the judiciary has no power to add additional exceptions; the enumeration of specific exceptions precludes implying others. [Citation.]" (*Parmett v. Superior Court* (1989) 212 Cal.App.3d 1261, 1266 [262 Cal.Rptr. 387].) Having given the authority to request a waiver only to the department and the power to waive the disqualification only to the director of DSS, it is apparent that the Legislature did not intend to confer such authority on the juvenile court.

Here, the department did not request a waiver from the Director of DSS. (§ 361.4, subd. (d)(3).) The reasons for that decision are clearly amplified in the record. (*Ibid.*; *In re Jullian B., supra*, 82 Cal.App.4th at p. 1347.) Robert has numerous disqualifying narcotics-related convictions and a very recent arrest for driving under the influence. Additionally, as the department observes, a waiver would be inappropriate under section 300.2, which declares that a placement be free from the negative effects of substance abuse.[7] The department's decision is reviewed for abuse of discretion. (*In re Jullian B., supra*, at p. 1350.) In our view, the department's recommendation against

---

[5]Health and Safety Code section 1522, subdivision (g)(1) states, "[a]fter review of the record, the director may grant an exemption from disqualification . . . if the director has substantial and convincing evidence to support a reasonable belief that the applicant and the person convicted of the crime, if other than the applicant, are of such good character as to justify issuance of the license or special permit . . . ."

[6]The *Jullian B.* court elucidated at least one reason for restricting to the director of DSS the power to grant exemptions: "As DSS is the ultimate overseeing authority for approval of community care licenses and adoptive placements, the director is uniquely positioned to ensure uniform statewide application of the grant or denial of exemptions. Such uniformity prevents 'forum shopping' by prospective adoptive parents and licensees." (*In re Jullian B., supra*, 82 Cal.App.4th at pp. 1350-1351.)

[7]Section 300.2 states, in relevant part, "Notwithstanding any other provision of law, the purpose of the provisions of this chapter relating to dependent children is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and so ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm. . . . The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment."

Although the successful participation in a treatment program for substance abuse may be considered in evaluating the home environment under section 300.2, Robert's recent arrest for

seeking a waiver and against placing the children with Robert and Delores represents a solid exercise of discretion. Pursuant to section 361.4, Robert's criminal record automatically disqualified his house from serving as placement for the children and, in the face of departmental opposition and no application for a waiver, the juvenile court had no statutory authority to circumvent sua sponte the requirement in section 361.4, subdivision (d)(3) of an application to the DSS for a waiver.

Focussing on the goal of the dependency law to preserve families whenever possible and to promote the safety and well-being of dependent children, counsel for Richard and Serena contend that section 361.4 should not be interpreted in a manner that removes all discretion from the juvenile court. Counsel argue that a construction of section 361.4 that absolutely prohibits placing the child in the home of a person with a disabling criminal conviction would conflict with the broad discretion vested in the juvenile court generally to make decisions that promote the "best interests of the child."

We disagree. The general "best interest of the child" standard cannot supplant the specific prohibition in section 361.4. (See *Lake v. Reed* (1997) 16 Cal.4th 448, 464 [65 Cal.Rptr.2d 860, 940 P.2d 311] [reciting rule of statutory interpretation that specific provision controls over more general provision].) Furthermore, section 361.4 represents the Legislature's determination that it would *not* be in the best interest of the dependent child to be placed with a relative with a disqualifying criminal conviction. The author of the Lance Helms Child Safety Act, of which section 361.4 is a part, sought to address the dangers faced by children in the dependency system and anticipated that enacting this statute would help to protect children and provide them with a safe environment while in the system. (Sen. Rules Com., Analysis of Sen. Bill No. 645 (1997-1998 Reg. Sess.) as amended July 27, 1998.)

Next, counsel for the children argue that the department's interpretation of section 361.4 subdivision (d)(2) directly conflicts with the court's role as laid out in section 319.[8]

---

driving under the influence reasonably suggests to the department that Robert remains a risk under section 300.2.

[8]In pertinent part, section 319 reads, "If the child cannot be returned to the custody of his or her parent or guardian, the court shall determine if there is a relative who is able and willing to care for the child. . . . [¶] When the child is not released from custody, the court *may order that the child shall be placed in the suitable home of a relative* . . . . [¶] As used in

There is no conflict. Paragraphs 3 and 5 of subdivision (d) of section 319 give the juvenile court the discretion to place a detained child in a *"suitable home of a relative."* (§ 319, italics added.) Section 361.4 constitutes a declaration that a home in which a person with a criminal record is living is *not suitable*. (§ 361.4, subd. (d)(2).) Indeed subdivision (d) of section 319 directs that the court "shall" consider the department's recommendation based on the assessment of suitability, *including a criminal records check.* Here, the court ignored the department's advice. In any event, Robert is not entitled to preferential consideration for placement under section 319, because he is neither "a grandparent, aunt, uncle [n]or sibling of the child." (§ 319, subd. (d), ¶ 4.)

*In re Jullian B., supra*, 82 Cal.App.4th 1337, cited by the children's attorneys, does not change the result here. Jullian was a member of an Indian tribe and subject to the placement preferences of the Indian Child Welfare Act. (ICWA, 25 U.S.C. § 190 et seq.) The *Jullian B.* court wrestled with the relationship between, on the one hand, the ICWA, which mandates that preference in adoptive placement of Indian children be given to Indian families in the absence of good cause to do otherwise (25 U.S.C. § 1915(c)), and on the other hand, the section 361.4, subdivision (d)(2) placement prohibition. In selecting a non-Indian family, the county had rejected the ICWA's preference for placing Jullian B. with his maternal great-uncle, nominated by the tribe, because the uncle had a history of two criminal convictions 20 to 30 years earlier. The appellate court reversed the juvenile court's finding that the county had met its burden of establishing good cause under the ICWA to avoid its preference. The reviewing court held, to circumvent the ICWA's placement preference where the applicant has a disqualifying criminal conviction, the department must request a waiver from the director of DSS, or explain why, based on the merits of the individual case and subject to review for abuse of discretion, no waiver had been sought. (*In re Jullian B., supra*, at p. 1350.) The county had not considered whether the statutory disability for the criminal conviction should be waived for Jullian.

this section, 'relative' means an adult who is related to the child by blood, adoption, or affinity within the fifth degree of kinship, including stepparents, stepsiblings, and all relatives whose status is preceded by the words 'great,' 'great-great,' or 'grand' . . . . *However, only the following relatives shall be given preferential consideration for the placement of the child: an adult who is a grandparent, aunt, uncle, or sibling of the child.* [¶] The court *shall* consider the recommendations of the social worker based on the emergency assessment of the relative's suitability, *including the results of a criminal* records check . . . prior to ordering that the child be placed with a relative. . . ." (Italics added.)

Analogizing to the section 361.3 preference for placements with relatives,[9] counsel for the children argue *Jullian B.* lends support for the notion that the juvenile court retains some discretion to avoid the disqualifying criminal conviction in favor of the preference for relative placement.

Obviously, we are not concerned here with the ICWA, or what constitutes good cause *under the ICWA* for avoiding its strong preferences. More important, *Jullian B.* does not stand for the proposition that the *juvenile court* has discretion to choose to disregard the disabling criminal conviction under section 361.4, subdivision (d)(2). *In re Jullian B.* states that the juvenile court's discretion under section 361.4 is to review the department's decision not to seek a waiver under that statute. The juvenile court also has discretion once the Director of DSS waives the disability, to "determine[s] whether there is good cause [under the ICWA] to *avoid the preferences of the ICWA* and to determine a placement that is in the best interest of the minor." (*In re Jullian B., supra*, 82 Cal.App.4th at p. 1350, italics added.) Neither *Jullian B.* nor the Welfare and Institutions Code's preference can be read to confer on the juvenile court any discretion to actively disregard the disabling conditions of subdivision (d)(2) of section 361.4, especially in view of the department's recommendation to the contrary here and without a waiver.[10]

Finally, counsel for the children argue that this writ should be dismissed as moot because, in response to our notice to vacate its placement order (*Palma v. U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d at p. 180), the court directed Robert to move out of the house. Counsel is wrong. As the department notes, this issue is being raised with increasing frequency and so

---

[9]In relevant part, section 361.3 provides that whenever a child is removed from the custody of his or her parents under section 361, "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative. In determining whether placement with a relative is *appropriate*, the county social worker and court shall consider, but shall not be limited to, consideration of all the following factors: [¶] . . . . [¶] . . . The good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts . . . ." (Italics added.)

[10]Pointing to the testimony, counsel for the children argue that the court exercised its discretion when it ordered the children placed with Robert and Delores because the evidence shows that the great uncle and aunt are caring for the children. While there is evidence supporting the court's *finding* that Robert and Delores are responsible, caring, and forthcoming, these facts are irrelevant to the court's task because, as explained above, the statute does not authorize the court to exercise its discretion to place the children with in a home with someone who has a disqualifying criminal conviction, absent a waiver from the DSS. (§ 361.4, subd. (d)(2).) Therefore, under the circumstances here, the factual findings do not affect the placement order.

it is not moot.[11] Additionally, the section 361.4, subdivision (b) disqualification applies not only to those living in the home, but also to "any . . . person over the age of 18 years . . . known to the placing entity who may have significant contact with the child, *including any person who has a familial or intimate relationship with any person living in the home.*" (§ 361.4, subd. (b), italics added.) Robert has a "familial or intimate relationship" with Delores. He certainly has a familial relationship with the children and has been shown to have "significant contact" with them. The children reside in Robert's home, Robert is the blood relative, and Robert is the one with the criminal record. Regardless of whether Robert is living in the house, his disqualifying convictions disqualify the house and the trial court cannot conveniently circumvent the statute's placement prohibition by ordering Robert out of the house and placing the children with Delores. In short, the juvenile court acted in excess of its authority when it ordered the children placed with Robert and Delores.

## DISPOSITION

The petition for writ of mandate is granted. The alternative writ issued on September 29, 2000, is hereby discharged. Let a writ of mandate issue directing the superior court to vacate the orders entered which place the children in a home in which Robert M. resides or which affords him significant contact with the children, and to enter a new order removing the children from the home of Delores M. and placing them in a suitable home. The superior court is further directed to vacate the order granting Delores M. guardianship over the children.

Klein, P. J., and Perluss, J.,* concurred.

The petition of minors for review by the Supreme Court was denied June 27, 2001.

---

[11]Not only has this issue already been brought to the attention of this district Court of Appeal in at least two other cases, but with respect to this case in particular the issue has and will recur: Robert moved out of and then returned to, his and Delores's house; there is no indication that his marriage to Delores is dissolved; Delores and Robert both stated to the department social worker that Robert will return as soon as dependency jurisdiction is terminated.

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.