[No. D042729. Fourth Dist., Div. One. Apr. 22, 2004.]

In re HANNA S., a Person Coming Under the Juvenile Court Law.

SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. HANNA S., Defendant and Appellant.

## COUNSEL

Julie E. Braden, under appointment by the Court of Appeal, for Minor and Appellant.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**AARON, J.**—The minor, Hanna S., appeals an order made at a special hearing under the Welfare and Institutions Code.[1] Hanna, who was freed for adoption in October 2002, wanted to be placed in the home of her paternal aunt and uncle, Kim S. and Charles K. However, because Kim and Charles had criminal records and Kim had a record with Child Protective Services (CPS), Hanna could not be placed with them unless the social worker obtained a criminal records exemption. (§ 361.4, subd. (d)(2).) Hanna asserts the juvenile court should have determined the San Diego County Health and Human

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise specified.

Services Agency (Agency) abused its discretion because the social worker never sought an exemption. We conclude the social worker did in fact seek an exemption, and, accordingly, affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Hanna was born in February 1999 with marijuana in her system. Her mother, Angela D., admitted having smoked marijuana three days before the child's birth. Angela declined the services offered by the social worker and Hanna was taken into protective custody. Later that month, Angela and Michael S., Hanna's father, agreed to participate in voluntary services and signed a voluntary contract. As part of the contract, the parents agreed not to use illegal drugs. Hanna was also allowed to remain in their custody. In October, however, they tested positive for marijuana. Consequently, the next month, the Agency removed nine-month-old Hanna from her parents' custody and filed a section 300 petition on her behalf. The petition alleged Hanna needed protection because she had tested positive for drugs at birth and her parents had not made substantial progress with their voluntary contract. The next month, the court made a true finding on the petition and declared Hanna to be a dependent, but placed her with her parents.

In June 2001, the Agency filed a section 387 petition on Hanna's behalf because Angela had not been complying with the terms of her plan, had been leaving drug treatment without permission, had not been testing for drug use, and her whereabouts were unknown. The court made a true finding on that petition, removed Hanna from her parents' custody, and ordered reunification services. At the six-month review hearing, the court terminated reunification services and scheduled a section 366.26 hearing.

At the October 2002 section 366.26 hearing, after finding that Hanna was adoptable and that none of the section 366.26, subdivision (c)(1) exceptions applied, the court terminated parental rights. At that time, the social worker expected that Kim and Charles would adopt Hanna. She knew she had to obtain an exemption from her supervisors before a home study could begin because Kim and Charles had criminal records and Kim had a CPS record. However, she believed an exemption would be granted "based on their current life situation."

In January 2003, an Agency committee, comprised of supervisors and a chief in the adoption unit, decided that the home study would not be approved because of Kim's and Charles's criminal records and Kim's CPS record. After learning about this decision, the social worker sought a case consultation with her supervisors and made a presentation to them, arguing that an exemption should be granted. Her supervisors disagreed, declined to grant the exemption, and refused to conduct a home study of Kim and Charles.

In April 2003, Hanna sought a special hearing requesting that the court review the Agency's determination not to place Hanna with Kim and Charles. The reason for the special hearing was that the Agency was "no longer willing to place Hanna with [Kim] because of [Kim's] 10 year old [*sic*] criminal record." Hanna's attorney believed Kim was an "excellent placement choice." Hanna had "been prepared to move to [Kim's home and] wants to live there." The attorney contended the Agency's "failure to waive [Kim's] record is an abuse of discretion." After hearing testimony, the court denied Hanna's request.

## DISCUSSION

The sole issue Hanna raises in her appeal is that the juvenile court should have found that the Agency abused its discretion by not requesting an exemption from the Director of the California Department of Social Services for Kim's and Charles's criminal records and Kim's CPS records. The difficulty with this appeal is that in the juvenile court, Hanna did not contend that the Agency failed to seek an exemption and that the failure to do so constituted an abuse of discretion. Rather, she asserted that the court should have determined the Agency abused its discretion because it would not grant an exemption for Kim's and Charles's criminal records. However, because Hanna has narrowly tailored her appeal to raise only the asserted failure of the Agency to request an exemption of Kim's and Charles's criminal and Kim's CPS records, we are limited to reviewing only that issue.

■ Before a child may be placed in the home of a relative who is not a licensed or certified foster parent, the county social worker must instigate a criminal records check. (§ 361.4, subd. (b).) "If the fingerprint clearance check indicates that the person has been convicted of a crime that would preclude licensure under Section 1522 of the Health and Safety Code, the child shall not be placed in the home, unless a criminal records exemption has been granted by the county." (§ 361.4, subd. (d)(2).)

The parties agree that Kim and Charles have criminal records, and that Kim has a CPS record, which preclude placement unless an exemption is granted. The parties further agree that those records were of the kind for which an exemption could have been granted. The parties dispute whether an exemption was sought. Hanna asserts that no exemption was sought; the Agency asserts that the social worker sought an exemption, but that her supervisors denied her request.[2]

---

[2] In the juvenile court, Hanna's counsel appeared to argue that the social worker had in fact sought an exemption in arguing that the issue before the court was whether there had been "an abuse of discretion by the [Agency] in failing to exercise its ability to grant a waiver."

■   Preliminarily, we examine how an exemption may be obtained. At one time, the State Department of Social Services had the sole authority to grant exemptions. (Former § 361.4, subd. (d)(3); *In re Jullian B.* (2000) 82 Cal.App.4th 1337, 1350 [99 Cal.Rptr.2d 241] ["the Legislature has made no provision for delegation of this duty outside the [Department of Social Services]"].) However, effective October 2001, the Legislature modified section 361.4, subdivision (d) to allow a county to issue a criminal records exemption if it has been granted permission to do so by the Director of Social Services. (§ 361.4, subd. (d)(3)(A), as amended by Stats. 2001, ch. 445, § 1.) San Diego County sought and received permission to issue such exemptions. (State DSS All-County Letter No. 01-69, dated Oct. 18, 2001 <http://www.dss.cahwnet.gov/getinfo/acl01/pdf/01-69.pdf> (as of Apr. 22, 2004).)[3] Therefore, despite Hanna's argument that either the social worker or her supervisor had to request an exemption from the statewide Department of Social Services, the Agency, as an arm of San Diego County, had the authority to grant the exemption.[4] The statewide Department of Social Services is involved in the exemption procedure only to the extent that it grants permission to the counties to issue exemptions, and randomly monitors the actions on exemptions taken by the social services departments of those counties. (§ 361.4, subd. (d)(3)(A) & (B), (d)(4).)

Although neither the Welfare and Institutions Code nor the Health and Safety Code provides the specific procedure by which an exemption may be sought, nothing in the statutory scheme indicates that the social worker cannot make the request for an exemption orally. Here, the social worker knew that before she could place Hanna with Kim and Charles, she had to request an exemption from her supervisors. After learning that her supervisors had declined to proceed with Kim and Charles's home study, she requested

---

[3] Hanna asserts we should not rely on the letter showing the county had the authority to grant exemptions because the Uniform Resource Locator (URL) provided by the Agency leads to a Web site that is not accessible to the public. Hanna has understandably misread the URL. In Times New Roman, the font used by the Agency and this court, a lower case letter "l" and a numeral "1" are virtually indistinguishable. Hanna apparently misinterpreted the character after "ac" in the URL to be a numeral "1," rather than the letter "l." When the letter "l" is placed in the URL after the letters "ac," the Web site in which the letter cited by the Agency is located. However, when a numeral 1 is inserted after the letters "ac," a nonpublic Web site is located.

[4] In her reply brief, Hanna asserts, "the case turned on the previously unknown delegation of authority from the state Director [of the state Department of Social Services] to local social workers and therefore reversal would be required for an abuse of discretion because the juvenile court lacked evidence [the Agency] asserted [in its respondent's brief] was essential to its decision." In other words, she complains that the letter relied upon by the Agency in this appeal showing that the Director of the Department of Social Services has delegated to the Agency the authority to grant exemptions was not introduced in the trial court. However, at the hearing, Hanna elicited testimony from the social worker establishing that her supervisors had the authority to grant such exemptions. She did not challenge the ability of the supervisors to do so. Thus, the fact that the Agency had the authority to grant exemptions was before the juvenile court.

a case consultation because she believed the Agency should take a closer look and have all the facts before making this decision. At the case consultation, the social worker told her supervisors that Kim's and Charles's convictions were subject to exemption. She also advocated on behalf of Kim and Charles, presented the facts of the case as she saw it, and requested a home study. She presented letters of recommendation, and discussed the exact nature of the criminal records and Kim's CPS referrals, her positive experiences with the family, and Kim's and Charles's relationships with their children. The record reflects that the social worker did request that her supervisors exempt Kim's and Charles's otherwise disqualifying records.

However, the supervisors and the chief, each of whom had 10 to 20 years of experience, decided it would not be in Hanna's best interests to be placed with Kim and Charles. They agreed that because of the family's past criminal and CPS history, the request for an adoptive home study would be denied.

We acknowledge that there was abundant evidence in the record that would have supported the granting of an exemption. Hanna loved Kim and wanted to live with her. Hanna's foster parent, the social worker, and Hanna's counsel all believed Hanna should be placed with Kim and Charles. Such a placement would satisfy the Legislature's preference for placement with relatives. (See, e.g., § 361.3.) In addition, an expert in parent-child observations testified that he believed it was better to place a child with a relative with whom the child has a connection rather than with a stranger. Further, Kim's and Charles's criminal and CPS records were old. Charles's last conviction was in 1991 and Kim's was in 1989. There is no evidence the Agency had received any referrals on the care of their children since 1993.[5] Both Kim and Charles have been gainfully employed for the last several years and they are successfully raising two daughters. Charles has been sober since 1990 or 1991 and Kim has apparently been sober since 1993 or 1994.

However, once a child has been freed for adoption, the juvenile court's powers are limited to reviewing whether the Agency has abused its discretion in placing the child. (*In re Harry N.* (2001) 93 Cal.App.4th 1378, 1397 [114 Cal.Rptr.2d 46].) The court had no discretion to disregard the necessity for an exemption. It could not order the Agency to place Hanna with Kim and Charles without a waiver of the criminal records and CPS records that disqualified them for licensure because if an exemption is not granted, then the home is deemed not "suitable" under section 361.4. (*Los Angeles County Dept. of Children & Fam. Services v. Superior Court* (2001) 87 Cal.App.4th 1161, 1170 [105 Cal.Rptr.2d 254].)

---

[5] Although there is a record of a referral in 1998, Kim denied any Agency involvement at that time and the social worker could find no information on the alleged referral.

The record in this case establishes that the social worker in fact advocated that an exemption be granted to Kim and Charles, but that her supervisors and chief disagreed and declined to approve a home study of Kim and Charles based on their criminal records and Kim's CPS record.[6] Because the social worker sought an exemption and the sole contention Hanna raises in this appeal is that the Agency abused its discretion in failing to seek an exemption, Hanna has not demonstrated reversible error.

## DISPOSITION

The order is affirmed.

Huffman, Acting, P. J., and Nares, J., concurred.

A petition for a rehearing was denied June 21, 2004.

---

[6] Between 1984 and 1989, Kim was arrested 13 times and was convicted of six misdemeanors and one felony. The court terminated her parental rights to one of her children and she relinquished her rights to another. One daughter, with whom she eventually reunified in 1995, was out of her care for two years. Charles has been convicted of grand theft, automobile theft, burglary, and drug charges. Both also had drug problems.