Filed 6/27/13  In re L.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.M., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>C.M.,<br><br>    Defendant and Appellant. | E056563<br><br>(Super.Ct.No. RIJ1100742)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

Nicole W. (mother) and Anthony M. (father) are the parents of L.M. (the child). Appellant Cindy M. (grandmother) is the child's grandmother, and Jack M. (grandfather) is the child's stepgrandfather. On appeal, grandmother contends that the juvenile court abused its discretion in denying her Welfare and Institutions Code[1] section 388 petition. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 24, 2011, the Riverside County Department of Public Social Services (the department) filed a section 300 petition on behalf of the child. The child was 13 months old at the time. The petition alleged that the child came within the provisions of section 300, subdivision (b) (failure to protect). Specifically, the petition alleged that mother and father (the parents) had a history of domestic violence, and that father engaged in acts of violence while mother was holding the child. Furthermore, both parents had histories of abusing controlled substances, and father had a criminal history and was currently on parole.

*Detention*

The social worker filed a detention report stating that she responded to a referral of general neglect of the child on May 21, 2011. It was reported that the parents had engaged in domestic violence. Father left their residence (they lived with the grandparents) before the police arrived, and mother obtained an emergency protective order. Upon arriving at the residence, the social worker noted a strong odor in the house that smelled like rotting trash. The home was in disarray. Mother admitted that she and father argued constantly, but stated

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

they only became physical once in the past. She further admitted that she and father previously used controlled substances, and that she used to have an alcohol problem. Mother submitted to a drug test and tested positive for methamphetamine. A police officer informed the social worker that father was on parole and was being implicated in a stolen vehicle investigation. The social worker placed the child in protective custody. The social worker noted that grandmother subsequently indicated that the parents were willing to move out of the home so that the grandparents could be assessed for placement. The grandparents were to inform the department if they decided to be assessed. The social worker also noted that when mother was a minor, she was removed from the grandparents' custody.

At the detention hearing on May 25, 2011, the court placed the child in the temporary custody of the department and detained her in foster care. *Jurisdiction/disposition*

The court held a jurisdiction hearing on June 27, 2011. The court found that the child came within section 300, subdivision (b), and adjudged her a dependent of the court. The court ordered the parents to participate in reunification services.

*Six-month Status Review*

The social worker filed a six-month status review report on December 7, 2011, recommending that the parents' reunification services be terminated. The parents had not made any progress in their case plans. The social worker noted that the grandparents visited the child weekly, and that the child looked happy to see them. The social worker further reported that the child was placed in a foster home that was meeting her needs, including her speech and reactive delays. The foster parents were willing to provide a permanent home

3

for the child.  Both the grandparents and the foster parents were going to be screened for adoptive placement.

In an addendum report, the social worker reported that a relative assessment referral was made on behalf of the grandparents.  On November 29, 2011, a social worker informed grandfather that a criminal records exemption was needed, and that a packet had been mailed to him.  On January 9, 2012, grandfather reported that he was still working on the exemption packet.  A home assessment was completed of the grandparents' home, but it failed to pass the assessment.  On January 23, 2012, grandfather was informed of three things that needed to be fixed to make the home safe and suitable for the child.  Approximately two weeks later, the social worker called grandfather regarding a reassessment.  Grandfather said the home was not ready and that he would call the social worker when it was ready to be reassessed.  The social worker further reported that a relative assessment referral was also submitted on behalf of the paternal grandmother, who lived with her boyfriend.  Both the paternal grandmother and her boyfriend required criminal records exceptions.

At a contested six-month review hearing on February 8, 2012, the court terminated reunification services and set the matter for a section 366.26 hearing.[2]  The court also stated its concern that there were relatives that tried to assess for placement, but because of their criminal records, they had not progressed in the process.  The court ordered the department

_____

[2]  The court subsequently continued the section 366.26 hearing, and it was apparently held on August 28, 2012.

4

to stop trying to find relatives to place the child with, and to proceed with the assessment on the current caretakers, since the child had been living with them for nearly eight months.

*Section 388 and Section 366.26*

On April 18, 2012, grandmother filed a section 388 petition, seeking custody of the child. As to changed circumstances, she simply stated, "Fighting for legal guardian, [adoption]." As to the best interest of the child, grandmother stated, "She's are [*sic*] grandbaby[,] deserves to be with family. We love her. Want to give her a better life."

The social worker filed a section 366.26 report on May 17, 2012, recommending that parental rights be terminated and adoption be made the permanent plan. The social worker reported that a criminal exemption request was submitted on behalf of the grandparents, but was denied on April 18, 2012. The social worker further noted that there was a "lack of timely follow through and the withdrawing of the RAU referral as to the paternal grandmother." The social worker also reported that the child was attached to her current caregivers and considered them to be her "Momma and Papi." The child had bonded well with them, and they were fully prepared to complete the adoption process and make the child a permanent member of their family.

The court held a hearing on the section 388 petition on June 7, 2012. Grandmother addressed the court and stated that she would like to have custody of the child and did not understand why the child was still in foster care. She said that her house had been assessed, and she had "done everything that they want us to do." County counsel explained to the court that, at the dispositional phase, the child was not placed with the grandparents because the parents resided with them; however, that circumstance changed at some point. Then, on

5

November 23, 2011, there was a need for a criminal records exemption with respect to grandfather, and a packet was mailed out to him. When the department followed up on January 9, 2012, he was still working on completing the packet. On January 12, 2012, the department conducted a home assessment and noted a few things that needed to be repaired or corrected. At the follow-up on January 23, 2012, the grandparents indicated that their home was not ready to be assessed again. Furthermore, grandfather submitted the criminal records exemption packet on March 14, 2012, and the exemption was denied on April 18, 2012. County counsel explained that there was no opportunity to exercise discretion and place the child in the home. In the meantime, the child had been in her current foster home for half of her life, and she was attached to her foster parents. After hearing arguments and reviewing the written motion and reports filed, the court stated that it had not been provided with any information upon which it could find that the department abused its discretion in making its placement decision, or in denying the criminal exemption. The court noted that it was the exclusive function of the department to make a decision regarding the exemption, and that the court had no information that the department had not properly fulfilled its obligation. Finally, the court noted that the child had been in the same foster home for one year and for all intents and purposes, the foster parents were mother and father to the child. The court opined that it would be "cruel to the child" to remove her from that situation, and found that it was certainly not in the child's best interest to do so. Therefore, the court denied the section 388 motion.

ANALYSIS

The Court Properly Denied the Section 388 Petition

Grandmother contends that the juvenile court abused its discretion in denying her section 388 petition.  Specifically, she claims that the court had the "duty and the authority to inquire regarding the nature and basis for the [d]epartment's decision not to grant grandparents' request for the [criminal records] exemption."  She contends that the court should have directed the department to provide information on how that decision was reached, and concludes that the court's failure to consider "all the evidence" was a failure to exercise its discretion.  Grandmother requests that the matter be remanded to require the juvenile court to make an inquiry into the department's basis for denying grandfather's criminal records exemption.  Assuming without deciding that grandmother has standing to appeal, we find no abuse of discretion.

Under section 388, "[t]he petitioning party has the burden of showing, by a preponderance of the evidence, that there is a change of circumstances or new evidence, *and* the proposed modification is in the child's best interest.  [Citations.]"  (*In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445 (*Daniel C.*).)  On appeal, we will not disturb the juvenile court's ruling on a section 388 petition absent a showing of a clear abuse of discretion.  (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415-416.)  The appropriate test for abuse of discretion is whether the trial court "'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'  [Citation.]"  (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 421.)

7

Here, as to changed circumstances, grandmother's petition alleged the following: "Fighting for legal guardian, [adoption]." This statement simply does not allege any changed circumstances. As to best interest of the child, the petition alleged: "She's are [*sic*] grandbaby[,] deserves to be with family. We love her. Want to give her a better life." These allegations do not demonstrate *how* placing the child with her would be in the child's best interest.

Furthermore, the record supports the court's finding that it was not in the best interest of the child to be placed in the grandparents' home. The evidence in the record shows that the grandparents' home failed to pass an assessment. On January 23, 2012, the grandparents were told that there were three things that needed to be fixed to make the home safe and suitable for the child. Approximately two weeks later, grandfather said the home was still not ready and that he would call the social worker when it was ready to be reassessed. Although grandmother testified at the hearing that they had "done everything" they were told to do, there was no evidence presented that grandfather had fixed the problems with the home or called the social worker to come and reassess the home after making such alleged repairs.

Grandmother focuses her argument on appeal on the denial of grandfather's criminal records exemption. However, grandfather's criminal record was only *one* reason why the court found it not to be in the child's best interest to place her in the grandparents' home. We also note that grandmother did not request, in her section 388 petition, that the court review the denial of the exemption. Even though no request was made, the court considered the issue at the hearing.

8

Before a child can be placed in the home of a relative, the social worker must conduct a visit to the home to ascertain the appropriateness of the placement, a criminal records check regarding all adults who live in the home, and a child abuse index check. (§ 361.4, subds. (a)-(c).) "If a relative has a disqualifying criminal conviction, the child cannot be placed in the relative's home without a grant of a criminal records exemption (exemption) by the State Department of Social Services or its county designee (agency). [Citation.]" (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1049 (*Esperanza C.*); see also § 361.4, subd. (d)(2).) "[S]ection 361.4 represents the Legislature's determination that it would *not* be in the best interest of the dependent child to be placed with a relative with a disqualifying criminal conviction." (*Los Angeles County Dept. of Children & Fam. Services v. Superior Court* (2001) 87 Cal.App.4th 1161, 1168.)

Here, grandmother asserts that the juvenile court failed to consider all of the evidence with regard to the exemption denial. Contrary to this claim, the records shows that the court read and considered a declaration filed by grandmother with her petition, heard testimony from grandmother, and took judicial notice of all the reports filed in this case. Moreover, as the petitioning party, grandmother had the burden of presenting evidence to show that the department erred in denying the exemption, and that the court should grant her section 388 petition. (*Daniel C.*, *supra*, 141 Cal.App.4th at p. 1445.) The court noted that it had not been provided with *any* information that showed the department abused its discretion in denying the criminal records exemption. Thus, grandmother simply failed to meet her burden. Although she claims that the court had "a duty and the authority" to inquire about

9

the basis for the department's denial of the request for the exemption, she fails to cite any authority to support that assertion.

Furthermore, as the court noted, by the time of the section 388 hearing, the child had been in the same foster home for approximately one year. The child was happy and bonded with her foster parents, and she viewed them as her parents. The foster parents loved the child, were meeting all her needs, and wanted to make her a permanent part of their family by adopting her.

Ultimately, we cannot say that the court's decision to deny the section 388 petition was arbitrary or capricious. We accordingly find no abuse of discretion.

<u>DISPOSITION</u>

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>HOLLENHORST</u>
Acting P. J.

We concur:

<u>McKINSTER</u>
J.

<u>RICHLI</u>
J.

10