[No. B166181. Second Dist., Div. Five. Oct. 2, 2003.]

LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Petitioner, v.
THE SUPERIOR COURT OF THE COUNTY OF LOS ANGELES, Respondent;
CHERYL M., Real Party in Interest.

510

512

COUNSEL

Law Office of Amir Pichvai and Amir Pichvai for Petitioner.

No appearance for Respondent.

Paul Mark Davis for Real Party in Interest.

Law Offices of Anne E. Fragasso and Cameryn Schmidt for Minors.

OPINION

**GRIGNON, J.**—Three sisters, ages 11, eight, and five (the children), who are dependent children of the court, have lived with their aunt for most of their lives. The children are under a permanent plan of long-term foster care in the home of the aunt, who is their de facto parent. The Los Angeles County Department of Children and Family Services (the Department) filed a supplemental petition under Welfare and Institutions Code section 387, alleging placement with the aunt was no longer effective in the protection of the children. The Department asked the dependency court for an order detaining the children from the aunt pending the resolution of the petition. Finding it would be "extremely detrimental" for the children to be removed from this placement, the dependency court denied the Department's request. The Department petitions for a writ of mandate directing the dependency court to vacate the order denying the detention request. The Department contends Welfare and Institutions Code section 361.4, subdivision (d)(2) deprives the dependency court of discretion to allow the children to remain with the aunt, because the aunt had been convicted, after the children were placed with her, of a criminal offense that would have precluded placement of the children with her initially. We hold that Welfare and Institutions Code section 361.4, subdivision (d)(2) does not deprive the dependency court of discretion to allow a dependent child to remain in his or her placement, because Welfare and Institutions Code section 361.4 does not apply to removal of dependent children from an existing placement. Accordingly, we deny the petition.

## FACTS AND PROCEDURAL BACKGROUND

Maria was born in July 1992, Angela was born in October 1994, and Jessica was born in December 1997 to their mother and respective fathers. Each child was removed from her parents at birth. Maria was declared a dependent of the court in February 1993 and Angela was declared a dependent in February 1995. In 1995, Maria and Angela were placed in the home of their maternal aunt, Cheryl M., in San Bernardino. Jessica was detained in Cheryl's home at birth. In 1998, Jessica was declared a dependent and placed in Cheryl's home. The children live in Cheryl's home with Cheryl's biological children and the children's older brother, whom Cheryl has adopted.

In 1998, Cheryl was convicted, by plea, of felony infliction of corporal injury upon her son in violation of Penal Code section 273d, subdivision (a). She received a probationary sentence. A supplemental petition under Welfare

and Institutions Code section 387 was sustained and the children were removed from Cheryl's care.

Cheryl's own children were declared dependents of the court in San Bernardino, but Cheryl successfully reunified with them. On May 27, 1999, after Cheryl had completed anger management, child development, and parent education/family relations classes, the dependency court ordered Jessica and Angela returned to Cheryl. At the hearing on May 27, 1999, the Department recommended against returning the children to Cheryl on the ground that Cheryl's recent physical abuse of her son, recent marriage, and recent return of her own three children created too many stressors. However, the Department did not argue that, because of Cheryl's felony conviction, Welfare and Institutions Code section 361.4 precluded return of the children to her. The Department did not seek review of the order returning Jessica and Angela to Cheryl's home.

On October 25, 1999, the dependency court ordered Maria returned to Cheryl. The Department recommended against returning Maria to Cheryl, because it was a violation of Department policy for the social worker to recommend the placement in light of Cheryl's criminal record for child endangerment. The Department did not seek review of this order.

In October 1999, the dependency court ordered a permanent plan of long-term foster care for the children. In 2002, the social worker reported that Cheryl hoped to adopt Maria, Angela and Jessica.

On November 5, 2002, Cheryl was arrested for inappropriate physical discipline of her daughter. She was convicted of misdemeanor disorderly conduct. She was given a probationary sentence.

On February 28, 2003, the Department filed a supplemental nondetained Welfare and Institutions Code section 387 petition, alleging the previous disposition had been ineffective in the protection of the children. At a hearing on February 28, 2003, the Department requested an order detaining the children from Cheryl. The Department asserted the dependency court was required by Welfare and Institutions Code section 361.4 to detain the children from Cheryl, because Cheryl had suffered a conviction of Penal Code section 273d. The Department argued the dependency court had no discretion to refuse detention.

The dependency court denied the request. "There is definitely one good thing about having served in the dependency court for 25 years. You tend to have an overview. I clearly understand the function of [Welfare and Institutions Code section] 361.4 and agree with it. It's to protect children from

being placed in a home where there is a criminal conviction for child abuse. . . . [¶] But when the Legislature created that, were they thinking of the case we have now before us? And I seriously do not think so. The statute should be strictly construed, and it reads clearly 'whenever a child may be placed in the home of a relative.' [¶] Today's hearing is not a question of placement at all. These children were placed in this home a long, long time ago. . . . [¶] If the Legislature had intended this, . . . I'm sure they would have [said] that 'whenever a child may be placed or removed from the home of a relative' that person may not have a criminal record involving child abuse. [¶] It is my opinion that the statute was never intended for this case. In the four years since that statute has been enacted . . . I have never had a case of this sort where . . . the Department asked the court to actually remove the child because of a criminal conviction. . . . [¶] I'm not being asked whether to place the children in the aunt's home. I am being asked to remove the children. . . . [It] has been their home for many, many, many years. And I think it would be unconscionable to remove them."

Concerning Cheryl's conviction in 1998, the dependency court stated: "[S]he had been asked to do a parenting class[,] which she did, and on her own, she did an . . . extensive anger management class, which had not even been required by the court. And that referee was recommending to the judge of that court that these children be returned to her home because of her insights into what she had done." Concerning the recent "altercation that she had with her teen-age daughter[,] I looked at the factual situation. It was at best inappropriate. Mother had returned from hospitalization for an ectopic pregnancy and was apparently not feeling well. The daughter was being a teenager at a teen-ager's very best having run up a humongous phone bill and then wants the pizza man to deliver. Mom picked up a small bamboo stick and she chased the girl around and lashed out and struck her on the shoulder. The police department was called. Took the people aside and counseled everybody and left. The police department goes back to the police station and finds out mother has a conviction, and then they come back and they take her off."

The dependency court found that neither the convictions nor the other evidence presented by the Department established a factual basis for removal of the children from Cheryl. Maria suffered from attention deficit hyperactivity disorder and posttraumatic stress disorder, and Cheryl had met all her needs. "The record is replete with an accolade as to the aunt's care of these children. [¶] It is the opinion of this court that it would be extremely detrimental at this time for the court to remove these children from this placement." Speaking to Cheryl, the dependency court said: "[Y]our devotion to the children cannot be questioned. . . . [¶] I'm consistently amazed at the

marvelous appearance of these children in court. They are well nourished. They are beautifully dressed, and they seem to be very happy young children . . . ."

The Department filed this petition for writ of mandate challenging the denial of the detention request. We issued an order to show cause and stayed the disposition hearing on the Welfare and Institutions Code section 387 petition. Cheryl and the children oppose the petition for writ of mandate.

## DISCUSSION

The Department contends the dependency court had no discretion to allow the children to remain with Cheryl, because, under Welfare and Institutions Code section 361.4, subdivision (d), Cheryl's conviction of felony infliction of corporal injury on a child made her ineligible as a placement. We disagree.

*Statutory Interpretation*

"In interpreting a statute, we apply the usual rules of statutory construction. 'We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] . . . To determine intent, " 'the court turns first to the words themselves for the answer.' " [Citations.] "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . ." ' [Citation.] We give the language of the statute its 'usual, ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose . . . . Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' " (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862 [35 Cal.Rptr.2d 809].)

*Statutory and Regulatory Scheme*

Welfare and Institutions Code section 361.4 provides in pertinent part: "(b) Whenever a child may be placed in the home of a relative, . . . the court or county social worker placing the child shall cause a state and federal level criminal records check to be conducted . . . with regard to [the relative, and others] in the home . . . . [¶] . . . [¶] (d)(1) If the fingerprint clearance check indicates that the person has no criminal record, the county social worker and court may consider the home of the relative . . . for placement of a child. [¶] (2) If the fingerprint clearance check indicates that the person has been convicted of a crime that would preclude licensure under Section 1522 of the

Health and Safety Code, the child shall not be placed in the home, unless a criminal records exemption has been granted by the county . . . . [¶] (3)(A) A county . . . shall evaluate individual criminal records in accordance with the standards and limitations set forth in paragraph (1) of subdivision (g) of Section 1522 of the Health and Safety Code, and in no event shall the county place a child in the home of a person who is ineligible for an exemption under that provision." (Welf. & Inst. Code, § 361.4.)

Health and Safety Code section 1522 sets forth requirements for the licensure of foster family homes when the applicant has a criminal record. All crimes, other than minor traffic violations, preclude the initial licensure to operate a foster family home under Health and Safety Code section 1522, unless an exemption is granted pursuant to Health and Safety Code section 1522, subdivision (g). Health and Safety Code section 1522, subdivision (a)(4)(A) provides that: "If the State Department of Social Services finds that the applicant [for a license to operate a foster family home] has been convicted of a crime other than a minor traffic violation, the application shall be denied, unless the director grants an exemption pursuant to subdivision (g)." Some crimes may not be granted an exemption. "[N]o exemption shall be granted pursuant to . . . subdivision [g] if[, inter alia,] the conviction was for . . . [¶] [a]n offense specified in Section . . . 273d . . . of the Penal Code." (Health & Saf. Code, § 1522, subd. (g)(1)(A)(i).)

Health and Safety Code section 1522, subdivision (a)(4)(D) provides in pertinent part: "If the State Department of Social Services finds after licensure . . . that the licensee . . . has been convicted of a crime other than a minor traffic violation, the license . . . may be revoked, unless the director grants an exemption pursuant to subdivision (g)." Thus, if the state Department of Social Services finds after licensure that a licensee has been convicted of a nonexemptible crime, the license may, but is not required to, be revoked.

■ The state Department of Social Services has adopted regulations concerning foster family home licensing. The regulations conform to the statute in distinguishing between the initial application for a license and revocation of an existing license. Title 22 of the California Code of Regulations section 89219, subdivision (g)(1) provides that, if the criminal records transcript discloses a criminal conviction for a crime other than a minor traffic violation and an exemption has not been granted, the Department shall, "[f]or initial applicants, [deny] the application [for a foster family home license]." "For current caregivers, the Department may institute an administrative action, including, but not limited to, revocation of the license." (Cal. Code. Reg., tit. 22, § 89219, subd. (g)(2).)

*Mootness*

We first address an issue concerning whether subsequent events have rendered the petition for writ of mandate moot. Subsequent to the detention hearing, the Superior Court of San Bernardino County reduced Cheryl's Penal Code section 273d conviction of infliction of corporal injury on a child from a felony to a misdemeanor, set aside the conviction, ordered the entry of a plea of not guilty, and dismissed the case pursuant to Penal Code section 1203.4. We requested supplemental briefing. In response, Cheryl and the children contend that the issue of the dependency court's authority under Welfare and Institutions Code section 361.4 to allow the children to remain in Cheryl's home is now moot, because Cheryl's disqualifying conviction has been expunged. We conclude the issue is not moot.

Penal Code section 1203.4 provides that, after a defendant has successfully completed probation and is not then serving a sentence or on probation for any offense, the defendant may withdraw his plea and enter a plea of not guilty, and the court shall dismiss the accusations or information against the defendant. (Pen. Code, § 1203.4, subd. (a).) The defendant "shall thereafter be released from all penalties and disabilities resulting from the offense of which he . . . has been convicted . . . ." (*Ibid.*)

■ However, expungement of a conviction pursuant to Penal Code section 1203.4 does not render the conviction a legal nullity. It does not release the defendant from nonpenal restrictions upon him and qualifications imposed for the protection and welfare of the public. (*People v. Vasquez* (2001) 25 Cal.4th 1225, 1230–1232 [108 Cal.Rptr.2d 610, 25 P.3d 1090] [a conviction of child sexual abuse that had been dismissed under an out-of-state statute that is similar to Penal Code section 1203.4 qualifies as a conviction for purposes of the application of the Sexually Violent Predator Act].) " '[Penal Code] section 1203.4 does not, properly speaking, "expunge" the prior conviction. The statute does not purport to render the conviction a legal nullity. Instead, it provides that . . . the defendant is "released from all penalties and disabilities resulting from the offense." The limitations on this relief are numerous and substantial . . . .' [Citation.] '[A]ction in mitigation of the defendant's punishment should not affect the fact that his guilt has been finally determined according to law.' [Citation.] 'That final judgment of conviction is a fact; and its effect cannot be nullified . . . by [a] later order dismissing the action after judgment.' [Citation.]" (*Ibid.*) " 'As used in section 1203.4 of the Penal Code[,] the words "penalties and disabilities" have reference to criminal penalties and disabilities or to matters of a kindred nature. But the disciplining of licensees such as the petitioners [vendors of alcoholic beverages] herein is for the protection of the public in the exercise of the police power and not for the purpose of punishing any licensee.' [Citation.]" (*Id.* at p. 1231.)

■ Health and Safety Code section 1522 explicitly provides that a Penal Code section 1203.4 expungement does not constrain the state Department of Social Services from taking any action it is permitted to take following a conviction. (Health & Saf. Code, § 1522, subd. (f)(1).) Health and Safety Code section 1522, subdivision (f)(1) provides in pertinent part: "Any action which the State Department of Social Services is permitted to take following the establishment of a conviction may be taken when the time for appeal has elapsed, or the judgment of conviction has been affirmed on appeal or when an order granting probation is made suspending the imposition of sentence, notwithstanding a subsequent order pursuant to Sections 1203.4 and 1203.4a of the Penal Code permitting the person to withdraw his or her plea of guilty and to enter a plea of not guilty, or setting aside the verdict of guilty, or dismissing the accusation, information, or indictment."

The dismissal of Cheryl's Penal Code section 273d conviction does not render the petition for writ of mandate moot. ■ The foster family home licensing statute provides that the authority of the state Department of Social Services to act on a conviction is not constrained by a dismissal of a conviction under Penal Code section 1203.4. Further, the provision in the foster family home licensing statute that no exemption may be granted from certain disqualifying crimes is designed for the protection of children, not for the purpose of punishing the applicant. As such, the restriction upon licensing imposed by Health and Safety Code section 1522 is not the sort of restriction from which Penal Code section 1203.4 was intended to release defendants. Welfare and Institutions Code section 361.4, subdivision (d) expressly incorporates the provisions of Health and Safety Code section 1522 that no exemption may be granted from certain disqualifying crimes. Accordingly, a Penal Code section 1203.4 dismissal of a nonexemptible conviction does not render the conviction either a nullity or exemptible for purposes of a relative placement under Welfare and Institutions Code section 361.4. Thus, the issue in this writ proceeding is not moot.

*Removal is not Mandatory*

■ Even though Cheryl's Penal Code section 273d conviction continues to operate as a nonexemptible disqualifying criminal offense under Health and Safety Code section 1522, subdivision (g), it does not prohibit the dependency court from exercising its discretion to allow the children to remain in their placement in Cheryl's home. This is because Welfare and Institutions Code section 361.4 does not apply when the issue is whether a child is to be removed from an existing placement if a criminal records check reveals a conviction occurring after the placement. (cf. *Los Angeles County Dept. of Children & Fam. Services v. Superior Court* (2001) 87 Cal.App.4th 1161, 1163–1167 [105 Cal.Rptr.2d 254] [The Department detained the children from mother and filed a Welfare and Institutions Code

section 300 petition. The appellate court held that Welfare and Institutions Code section 361.4 prohibited the dependency court from ordering the children released to a relative who had disqualifying criminal convictions].)

■    The statute refers only to placements.[1] Welfare and Institutions Code section 361.4, subdivision (b) requires a criminal record check "[w]henever a child may be *placed* in the home of a relative . . . ." (Italics added.) Welfare and Institutions Code section 361.4, subdivision (d)(1) states the home of a relative "may [be] consider[ed] . . . for *placement* of a child" if the relative's criminal record is clear. (Italics added.) Welfare and Institutions Code section 361.4, subdivision (d)(2) states the child "shall not be *placed* in the home" if the relative's criminal record would preclude licensure and an exemption has not been granted. (Italics added.) Under Welfare and Institutions Code section 361.4, subdivision (d)(3)(A), the county shall not "*place* a child in the home of a person who is ineligible for an exemption . . . ." (Italics added.) In addition, while Welfare and Institutions Code section 361.4 provides that consideration of a relative placement triggers a criminal records check, it contains no procedure for a criminal records check of a preexisting relative placement. Further, while Welfare and Institutions Code section 361.4 provides a procedure to be followed in the event a criminal records check reveals a conviction when placement with a relative is being considered, the section does not provide a procedure to be followed when removal of a child from an existing relative placement is being considered.

■    Health and Safety Code section 1522's definition of a disqualifying offense, and standards for granting an exemption, are incorporated in Welfare and Institutions Code section 361.4. (Welf. & Inst. Code, § 361.4, subd. (d).) Health and Safety Code section 1522 draws a distinction between denial of an application for a license and revocation of an existing license. (See Health & Saf. Code, § 1522, subd. (d)(7), (8); Cal. Code of Regs., tit. 22, § 89219, subd. (g).) A nonexempted disqualifying offense requires denial of a foster family home license, but does not require revocation of an existing license. (Health & Saf. Code, § 1522, subd. (d)(7), (8); Cal. Code Regs., tit. 22, § 89219, subd. (g).) Consistent with this distinction, a nonexempted disqualifying offense precludes the county from placing a child with the relative, but does not require removal from an existing relative placement. (Welf. & Inst. Code, § 361.4, subd. (d)(1).)

■    Since Welfare and Institutions Code section 361.4 did not deprive the dependency court of discretion to allow the children to remain in Cheryl's

---

[1] We do not address whether the dependency court has discretion to order a child *placed* with a relative who has a nonexemptible criminal conviction. This issue is not before us, and it concerns additional issues of statutory construction, the application of the separation of powers doctrine, and the due process rights of the children.

home, we conclude the dependency court had discretion to deny the Department's request to detain the children.[2] The Department does not contend in this petition that the dependency court otherwise abused its discretion when it refused to detain the children.

## DISPOSITION

The petition for writ of mandate is denied. The stay of the disposition hearing on the Welfare and Institutions Code section 387 petition, issued May 29, 2003, is vacated.

Turner, P. J., and Armstrong, J., concurred.

---

[2] We base our decision concerning removal of the children on statutory construction. Thus, we do not decide whether the separation of powers doctrine or the due process rights of the children also vest the dependency court with discretion.