[No. B175832. Second Dist., Div. Three. Jan. 28, 2005.]

LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Petitioner, v.
SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SENCERE P., Real Party in Interest.

## COUNSEL

Larry Cory, Assistant County Counsel, Arezoo Pichvai and Jacklyn K. Louie, Deputy County Counsels, for Petitioner.

No appearance for Respondent.

Mary Emily Smiley for Real Party in Interest.

Law Offices of Lisa E. Mandel, David Estep and Wendy Kingston for Minor.

## OPINION

**KLEIN, P. J.**—The Department of Children's and Family Services (DCFS) seeks writ review of an order of the juvenile court returning five-year-old H.S. to the care of her maternal grandmother, Sencere P. DCFS contends the order violated Welfare and Institutions Code section 361.4, which requires a criminal records check of all adults living in the home of any relative caretaker who is not a licensed foster care provider *before* a dependent child may be placed in the home.[1] We agree the failure to complete the criminal

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

At the time of the juvenile court's order, the pertinent provisions of section 361.4 provided: "(a) Prior to placing a child in the home of a relative, or the home of any prospective guardian or other person who is not a licensed or certified foster parent, the county social worker shall visit the home to ascertain the appropriateness of the placement.

"(b) Whenever a child may be placed in the home of a relative, or the home of any prospective guardian or other person who is not a licensed or certified foster parent, the court or county social worker placing the child shall cause a state and federal level criminal records check to be conducted by an appropriate governmental agency through the California Law Enforcement Telecommunications System (CLETS) pursuant to Section 16504.5. The criminal

records check contemplated by section 361.4 precluded return of H.S. to maternal grandmother at her new home. However, we deny the writ petition because the issue in this case has been rendered moot by subsequent developments.

## SUMMARY

Maternal grandmother moved with H.S., on an emergency basis, to the home of maternal grandmother's parents. A criminal records check revealed two of the residents of maternal grandmother's new home had felony convictions that precluded placement of H.S. in the home. In such circumstances, section 361.4 directs that a fingerprint clearance check be performed within five days to ensure the accuracy of the criminal records check. DCFS removed H.S. from maternal grandmother's care and filed a petition for modification of the case plan. Before the results of the fingerprint clearance check were available, the juvenile court ordered H.S. returned to maternal grandmother at the new home, ordering that H.S. not be left in the care of any person DCFS had not approved and noting H.S. continuously had been in maternal grandmother's long-term foster care.

We conclude that until such time as a fingerprint clearance check disproved the existence of the disqualifying convictions, or DCFS granted an exemption, the juvenile court lacked jurisdiction to place H.S. in the new home, notwithstanding the continuity of maternal grandmother's long-term foster care.

records check shall be conducted with regard to all persons over the age of 18 years living in the home . . . . Within five judicial days following the criminal records check . . . , the social worker shall ensure that a fingerprint clearance check of the relative and any other person whose criminal record was obtained pursuant to this subdivision is initiated through the Department of Justice to ensure the accuracy of the criminal records check . . . and shall review the results of any criminal records check to assess the safety of the home. . . . [¶] . . . [¶]

"(d)(1) If the fingerprint clearance check indicates that the person has no criminal record, the county social worker and court may consider the home of the relative, prospective guardian, or other person who is not a licensed or certified foster parent for placement of a child.

"(2) If the fingerprint clearance check indicates that the person has been convicted of a crime that would preclude licensure under Section 1522 of the Health and Safety Code [any crime other than a minor traffic offense], the child shall not be placed in the home, unless a criminal records exemption has been granted by the county, based on substantial and convincing evidence to support a reasonable belief that the person with the criminal conviction is of such good character as to justify the placement and not present a risk of harm to the child . . . ."

The current version of section 361.4 substitutes "criminal records check" for "fingerprint clearance check" in subdivisions (d)(1) and (d)(2). We address the significance of this amendment in footnote 4, *post*.

## FACTUAL AND PROCEDURAL BACKGROUND

H.S. has been a dependent child since June of 1999 and has been in the long-term foster care of maternal grandmother, Sencere P., since March of 2001. More recently, in March of 2004, the juvenile court indicated adoption was now the preferred plan.

On May 10, 2004, maternal grandmother's husband, Mark P., reported to the Children's Social Worker (CSW) that maternal grandmother had moved from their residence on 118th Place to the home of maternal grandmother's parents on Taper Avenue. Later that day, Mark P. was arrested following an incident of domestic violence at the 118th Place residence. That evening, DCFS removed H.S. from maternal grandmother's care.

On May 13, 2004, DCFS filed a supplemental petition under section 387 alleging, inter alia, that maternal grandmother and Mark P. had a history of domestic violence. At a detention hearing held that same day, the juvenile court released H.S. to maternal grandmother over DCFS's objection. The juvenile court found the recent incident of domestic violence did not occur in the presence of H.S. and DCFS previously had recommended adoption of H.S. by maternal grandmother.

Immediately after the hearing, the CSW investigated the Taper Avenue residence and found maternal grandmother's parents, Juanita and George T., and a family friend, Eddie H., living in the home. The CSW referred the case for investigation under the Adoptions and Safe Family Act (ASFA).

On May 17, 2004, an ASFA investigator reported the Taper Avenue home was unacceptable because, inter alia, a CLETS check revealed adults living there had criminal arrests or convictions, including a conviction of rape for George T. and convictions of hit and run and robbery for Eddie H.

On May 24, 2004, supervising DCFS case workers declined to grant an exemption authorizing H.S. to live in the Taper Avenue residence. The next day, the CSW advised maternal grandmother to move and offered referrals and assistance. Maternal grandmother refused and, on June 2, 2004, DCFS detained H.S. from the Taper Avenue residence.

At a hearing on June 4, 2004, DCFS amended the supplemental petition to reflect additional instances of domestic violence and DCFS's belief that two residents of the Taper Avenue residence had disqualifying criminal convictions. Counsel for DCFS represented to the court that preliminary results of the criminal records check disclosed one of the residents of the Taper Avenue home had a prior conviction of robbery, "which under the Code was not waivable" but, in order to make a final determination, DCFS needed the results of the "live scan," which were not yet available.[2]

The juvenile court indicated George T. personally had appeared before the court on June 3, 2004, and denied ever having been convicted of rape. The juvenile court noted domestic violence no longer was a concern because maternal grandmother and Mark P. had separated. Pending confirmation of the prior convictions by a fingerprint clearance check, the juvenile court ordered H.S. to remain in maternal grandmother's care but ordered maternal grandmother not to leave H.S. alone with anyone not approved by DCFS.

The juvenile court asked counsel for DCFS to put the matter on calendar as soon as further information on the prior convictions became available, especially if DCFS was unable to obtain a waiver. "But I need accurate information before we start saying [maternal grandmother] can't keep [H.S.] . . . . [H.S.] was released to her, and I know [maternal grandmother is] moving, but I'm not placing the child in [the Taper Avenue] home. I have already placed the child with this caretaker, and right now she's staying temporarily there . . . ."

In response to the juvenile court's order, DCFS filed the instant writ petition. We issued an order to show cause.

Thereafter, at a hearing below on the supplemental petition, maternal grandmother waived adjudication. The juvenile court removed H.S. from maternal grandmother's care and granted maternal grandmother "family reunification-like" services.

## CONTENTIONS

DCFS contends the juvenile court lacked authority to place H.S. with maternal grandmother in the Taper Avenue residence.

---

[2] Live Scan is an electronic fingerprinting system that provides a vehicle for quickly checking an individual's criminal background. (See Health & Saf. Code, § 1522.04.)

Counsel for H.S. contends the writ petition should be dismissed as moot. Alternatively, counsel for H.S. claims the order under review was not an abuse of the juvenile court's discretion.

## DISCUSSION

### 1. *Mootness.*

Counsel for H.S. suggests the petition be dismissed because H.S. has been removed from maternal grandmother's care and no effective relief can be granted in light of the resolution of the supplemental petition. (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315 [94 Cal.Rptr.2d 798].)

DCFS argues the issue is capable of recurring without being resolved and the issue is one of continuing public interest. (*In re Robert A.* (1992) 4 Cal.App.4th 174, 182 [5 Cal.Rptr.2d 438]; *In re Jody R.* (1990) 218 Cal.App.3d 1615, 1622 [267 Cal.Rptr. 746].)

We agree with DCFS. Clearly, the emergency movement of a relative caretaker from one home to another is not an unusual circumstance. Because the issue is likely to recur without being resolved, we address the merits of the petition.

### 2. *Overview of the statutory scheme.*

Section 361.4, known as the Lance Helms Child Safety Act of 1998, was named in honor of a toddler murdered by his father. The legislative history of the act contains the argument of the author, Senator Richard Polanco, in support of the bill. It discloses the bill was intended to replace "vague and ambiguous" statutes that allowed "the courts, social workers and attorneys to take the line of least resistance when dealing with abused children." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 645 (1997–1998 Reg. Sess.) as amended July 27, 1998.) The argument noted that "in 1994, in Los Angeles County alone, 39 children were murdered by either a parent or a caregiver. Twelve of the children murdered had open cases with child protective services." (*Ibid.*)

Section 361.4 addresses this concern by directing the CSW to visit the home of the relative caretaker. (§ 361.4, subd. (a).) The statute further requires the juvenile court or the county social worker to "cause a state and

federal level criminal records check" to be conducted with respect to all adults living in the home and, within five days thereafter, "the social worker shall ensure that a fingerprint clearance check of the relative and any other person whose criminal record was obtained pursuant to this subdivision is initiated through the Department of Justice to ensure the accuracy of the criminal records check . . . ." (§ 361.4, subd. (b).) If the criminal records check reveals the absence of a criminal record, "the county social worker and court *may* consider the home . . . for placement of a child." (§ 361.4, subd. (d)(1), italics added.) However, if the "fingerprint clearance check indicates that the person has been convicted of a crime that would preclude licensure under Section 1522 of the Health and Safety Code [any crime other than a minor traffic offense], the child shall not be placed in the home, unless a criminal records exemption has been granted by the county . . . ." (§ 361.4, subd. (d)(2).)

In *Los Angeles County Dept. of Children & Fam. Services v. Superior Court* (2001) 87 Cal.App.4th 1161, 1166 [105 Cal.Rptr.2d 254] (*Valerie A.*), this court held the prohibition in section 361.4, subdivision (d)(2), that a "[dependent] child shall not be placed in the home" where the child would have contact with an adult who has been convicted of a crime, other than a minor traffic violation, is mandatory. Further, section 361.4 vests the state Director of Social Services or the county with the exclusive authority to grant an exemption for a disqualifying conviction. (§ 361.4, subd. (d)(2), (3); *Valerie A., supra,* at pp. 1166–1167; *In re Jullian B.* (2000) 82 Cal.App.4th 1337, 1350 [99 Cal.Rptr.2d 241].)[3]

3. *Juvenile court lacked jurisdiction to place H.S. in Taper Avenue home until such time as fingerprint clearance check disproved the disqualifying convictions or DCFS granted an exemption.*

DCFS contends *Valerie A.* is directly applicable to this case. We agree. Maternal grandmother moved H.S. to a home that had not been approved. Thereafter, DCFS removed H.S. from maternal grandmother's care and filed a supplemental petition under section 387. In such a situation, before H.S. could be returned to maternal grandmother, the Taper Avenue home had to be

---

[3] The version of section 361.4 at issue here differs from the version at issue in *Valerie A.* in that the latter permitted the Director of Social Services to waive application of section 361.4. The current version of the statute permits the Director of Social Services to allow the county to issue exemptions. (§ 361.4, subd. (d)(3)(A).) Neither version grants the juvenile court authority to waive application of the statute or issue an exemption.

approved pursuant to section 361.4. The fact H.S. previously had been placed in maternal grandmother's long-term foster care on 118th Place did not relieve the juvenile court of its obligation to comply with section 361.4 with respect to the Taper Avenue residence.

■ "[W]hen a statute authorizes prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction . . . .' " (*Rodman v. Superior Court* (1939) 13 Cal.2d 262, 269 [89 P.2d 109]; see *Alliance Bank v. Murray* (1984) 161 Cal.App.3d 1, 6 [207 Cal.Rptr. 233].) ■ Here, the statutory scheme does not confer any authority on the juvenile court to waive a disqualifying conviction. Therefore, the juvenile court lacked jurisdiction to place H.S. in the Taper Avenue home in the face of the results of the criminal records check.

As indicated, the criminal records check revealed disqualifying convictions for two residents of the Taper Avenue home. Accordingly, under section 361.4, subdivision (b), DCFS had an obligation to obtain a fingerprint clearance check to ensure the accuracy of the criminal records check. Although the two alleged felons had submitted to fingerprint clearance checks in the form of live scans, the results of this investigation were not available at the time of the juvenile court's order.

Under these circumstances, placement of H.S. in the Taper Avenue home violated the prohibition of section 361.4. Rather than directing DCFS to bring the results of the fingerprint clearance check to its attention when they were available, the juvenile court should have ordered compliance with the statutory duty to obtain timely fingerprint clearance checks to confirm or deny the existence of the disqualifying felonies. Until such time as a fingerprint clearance check disproved the existence of the disqualifying convictions, or DCFS granted an exemption, the juvenile court lacked jurisdiction to place H.S. in the Taper Avenue residence, notwithstanding the continuity of maternal grandmother's long-term foster care.

■ Further, because section 361.4 does not authorize a juvenile court to grant an exemption for a disqualifying criminal conviction, the juvenile court could not rely on George T.'s denial of the existence of the prior conviction as a substitute for the results of the fingerprint clearance check. Thus, the order returning H.S. to maternal grandmother while the investigation of the prior convictions remained ongoing violated section 361.4, which requires

approval of the home or issuance of an exemption *before* the child is placed in the home.[4]

### 4. Cheryl M. *is distinguishable.*

Counsel for H.S. argues the order returning H.S. to maternal grandmother was appropriate, citing *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2003) 112 Cal.App.4th 509, 520 [5 Cal.Rptr.3d 182] (*Cheryl M.*). *Cheryl M.* held section 361.4 does not prevent a juvenile court from allowing a dependent child to continue in the care of a caretaker who suffers a conviction for a disqualifying offense after the child has been placed with the relative. *Cheryl M.* noted a nonexempt disqualifying offense requires denial of a foster family home license, but does not require revocation of an existing license. (Health & Saf. Code, § 1522, subd. (d)(7), (8).) Consistent with that distinction, *Cheryl M.* concluded a nonexempt disqualifying conviction precludes the county from placing a child in the home, but does not require removal from an existing relative placement.

Counsel for H.S. argues that because *Cheryl M.* permitted the juvenile court to allow a dependent child to remain with a caretaker who personally had suffered conviction of a disqualifying offense, the order in favor of maternal grandmother, who personally had no convictions, must be seen as proper.

However, *Cheryl M.* is distinguishable. At all relevant times, the children and the caretaker in *Cheryl M.* continued to reside in the same home, which DCFS had approved at the time of the initial placement. Here, maternal grandmother moved H.S. from an existing placement on 118th Place to an unapproved home on Taper Avenue. Therefore, this was not a continuation of a preexisting placement as was the case in *Cheryl M.*, but was a new placement in a new home, notwithstanding the juvenile court's previous order placing H.S. in maternal grandmother's long-term foster care. This fact was underscored by DCFS's removal of H.S. from maternal grandmother's care. Under these circumstances, placement of H.S. in the Taper Avenue home required compliance with section 361.4.

---

[4] Under the current version of section 361.4, the prohibition against placement of a dependent child in the home of a convicted felon arises upon receipt of a negative criminal records check. (See current § 361.4, subd. (d)(2).) In the version at issue in this case, the prohibition does not arise until the criminal records check has been confirmed by a fingerprint clearance check. Thus, in future cases, there will be no occasion for the juvenile court to concern itself with the results of the subsequent fingerprint clearance check, which section 361.4, subdivision (b), continues to require. The prohibition now arises immediately when a criminal records check indicates a member of the caretaker's household has suffered a disqualifying criminal conviction.

## DISPOSITION

The order to show cause is discharged. The petition for writ of mandate is denied.

Croskey, J., and Kitching, J., concurred.