Filed 2/11/14  In re B.T. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re B.T., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>B.J. et al.,<br><br>        Defendants and Appellants. | A136900<br><br>(San Francisco County<br> Super. Ct. No. JD113075) |

On October 21, 2011, the San Francisco Juvenile Court declared minor B.T. (minor) a dependent and placed him with a foster family.  Mother K.T. and father B.T. (collectively, parents) previously petitioned this court for an extraordinary writ, which we denied on June 24, 2013.  (*B.J. v Superior Court* (*San Francisco Human Services Agency*), 2013 Cal.App.Unpub. LEXIS 4438 (A138336).)  Parents now appeal a previous order, the combined six- and twelve-month review order (Welf. & Inst. Code, § 300), on two primary grounds:  (1) the juvenile court lacked jurisdiction over minor under the governing statute, the Uniform Child Custody Jurisdiction and Enforcement Act (Fam. Code, § 3400 et seq.), and (2) substantial evidence did not support the court's findings

1

that reasonable services had been provided and that returning minor to their care would be detrimental.[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

As set forth above, this is the second time we have been called upon to review rulings by the juvenile court in this dependency matter. On June 24, 2013, we denied a petition for extraordinary writ filed by parents challenging the juvenile court's order following the 18-month review hearing to terminate their reunification services and set the matter for hearing to implement a permanent plan for minor. Now, we are called on to review an *earlier decision* by the juvenile court: the order following the combined six- and 12-month review hearing to extend parents' reunification services for six months and to continue minor's placement with his foster family. Because the relevant facts (as well as more recent facts) have already been set forth in detail in our June 24, 2013, nonpublished opinion, we need not repeat them herein, but simply incorporate them by reference and proceed to the issues raised in this appeal: (1) whether the juvenile court possessed subject matter jurisdiction over minor for purposes of this dependency proceeding; and (2) whether substantial evidence supports the juvenile court's findings on August 24, 2012 that the agency provided reasonable services to the family and that returning minor to their care would be detrimental. We address these issues in turn below.

## DISCUSSION

### I. Is minor subject to California juvenile court jurisdiction?

Parents first argue the juvenile court lacked jurisdiction to conduct a dependency proceeding with respect to minor pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). (§ 3400 et seq.) Parents reason that the court "declined to exercise its temporary emergency jurisdiction powers" under Family Code section 3424, subdivision (a), despite a factual basis for doing so, and otherwise lacked subject matter jurisdiction under Family Code section 3421 because minor's home state of Mexico,

---

[1]     Unless otherwise stated, all statutory citations herein are to the Family Code.

which had jurisdiction over minor, did not decline to exercise it on the statutory ground that California was a more appropriate forum (which, they say, it was not).  As such, parents contend, all findings and orders of the juvenile court with respect to minor should be reversed and the matter remanded with instructions to dismiss the Welfare & Institutions Code section 300 (section 300) petition.  For reasons set forth below, we disagree.

The UCCJEA, formerly the UCCJA, was adopted in California effective January 1, 2000, and is now codified in sections 3400 et seq.  "The Act is the exclusive method of determining the proper forum in custody disputes involving other jurisdictions and governs juvenile dependency proceedings. (§§ 3402, subd. (c), 3421, 3423, 3424, subd. (a); *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1173 [108 Ca.Rptr.2d 493].)"  (*In re C.T.* (2002) 100 Cal.App.4th 101, 106; *In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1037, fn. 18.)

" '[S]ubject matter jurisdiction [under the UCCJEA] either exists or does not exist at the time the action is commenced' [citations], which is when the first pleading is filed. (§ 3402, subd. (e).)  'There is no provision in the UCCJEA for jurisdiction by reason of the presence of the parties or by stipulation, consent, waiver, or estoppel.'  ([Citation]; see § 3421, subd. (c) ['Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.'].)"  (*In re Marriage of Fernandez-Abin & Sanchez, supra,* 191 Cal.App.4th at p. 1040.)

"However, even when UCCJEA jurisdiction rests with another state or country, . . . a California court may exercise temporary jurisdiction if the child is present in this state and, as relevant here, the exercise of such jurisdiction is 'necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse.' (§ 3424, subd. (a).)"  (*In re Marriage of Fernandez-Abin & Sanchez, supra,* 191 Cal.App.4th at pp. 1040-1041.)  "The courts have interpreted 'emergency' as a situation in which a child is in immediate risk of danger if returned to a parent's care.  (See *In re Stephanie M.* [(1994)] 7 Cal.4th 295 [court asserted emergency jurisdiction over an abused child diagnosed as suffering from

battered child syndrome]; *In re Joseph D.* (1993) 19 Cal.App.4th 678 [23 Cal.Rptr.2d 574] [emergency jurisdiction was proper based on reported incidents involving sexual abuse by child's stepbrother and father].)  Aside from the necessity of protecting a child from immediate harm, presence of the child in the state is the only prerequisite.  (19 Cal. 4th at p. 688.) [¶] . . . In cases where the validity of the allegations are uncertain, the very possibility the allegations of immediate harm might be true is sufficient for the court to assume emergency jurisdiction in the best interests of the children.  (*In re Joseph D., supra*, 19 Cal.App.4th at p. 688.)"  (*In re Nada R., supra,* 89 Cal.App.4th at p. 1174.) See also *In re Angel L.* (2008) 159 Cal.App.4th 1127, 1138 [recognizing the Legislature's intent "to 'afford all children found in California the protection of California's juvenile court[s] in exigent circumstances' "], citing § 3424, subd. (e).)[2]  However, "[t]he finding

_____

[2]     Section 3424, as relevant here, provides:

"(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse.

"(b) If there is no previous child custody determination that is entitled to be enforced under this part and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 3421 to 3423, inclusive. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

"(c) If there is a previous child custody determination that is entitled to be enforced under this part . . . any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction . . . . The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

"(d) A court of this state that has been asked to make a child custody determination under this section, upon being informed that . . . a child custody determination has been made by . . . a court of a state having jurisdiction . . . shall immediately communicate with the other court. . . .

4

of an emergency 'should not be made "in a rush to judgment" but rather "after a full and fair evidentiary hearing." [Citation.]' [Citations.] Unsubstantiated allegations are insufficient to invoke emergency jurisdiction. [Citations.]" (*In re C.T., supra*, 100 Cal.App.4th at pp. 107-108.) "Under the Act, the jurisdictional finding is one of necessity in an emergency to protect the child who is subjected to or threatened with mistreatment or abuse." (*In re C.T., supra*, 100 Cal.App.4th at pp. 108-109.)

Further, "[a]ssumption of emergency jurisdiction is an assumption of temporary jurisdiction only. [Citation.] Therefore, while the court [may] properly exercise[] jurisdiction when . . . conduct[ing] a plenary hearing to determine whether an emergency existed, an emergency is not necessarily coextensive with the dependency." (*In re Nada R., supra*, 89 Cal.App.4th at p. 1175.) As explained by our appellate colleagues in the Fourth Appellate District, Division Three, "emergency jurisdiction is short-term and limited." (*In re Nada R., supra*, 89 Cal.App.4th at p. 1175.) Referring to the California Supreme Court case, *In re Stephanie M.* (1994) 7 Cal.4th 295, where the high court upheld the juvenile court's continuing assertion of jurisdiction over the minor pursuant to Family Code section 3424 " 'because of the emergency presented by the abuse of the child, and the impossibility of returning her immediately to her parents' " (*In re Stephanie M., supra*, 7 Cal.4th at p. 312), our colleagues concluded "[t]his ruling suggests that an emergency can exist so long as the reasons underlying the dependency exist." (*In re Nada R., supra*, 89 Cal.App.4th at p. 1175. See also *In re Angel L., supra*, 159 Cal.App.4th at p. 1139 ["[e]ven though emergency jurisdiction ordinarily is intended to be short term and limited, [the court] may continue to exercise its authority as long as the risk of harm creating the emergency is ongoing"].)

Here, parents argue the juvenile court "declined to take temporary emergency jurisdiction, opting instead to find it had subject matter jurisdiction under Family Code

"(e) It is the intent of the Legislature in enacting subdivision (a) that the grounds on which a court may exercise temporary emergency jurisdiction be expanded. It is further the intent of the Legislature that these grounds include those that existed under Section 3403 of the Family Code as that section read on December 31, 1999, particularly including cases involving domestic violence."

section 3421. Consequently, it failed to comply with the UCCJEA provisions in Family Code section 3424 for taking temporary jurisdiction or allowing temporary jurisdiction to ripen into permanent jurisdiction." We conclude, however, that parents misinterpret both the record and the law.[3]

In particular, at the September 16, 2011 hearing on mother's jurisdictional challenge, the juvenile court stated in relevant part: "[T]his court certainly had jurisdiction – emergency jurisdiction, and that's something, frankly, that's really undisputed. [¶] The next question, then, turns on whether, under the [UCCJEA], whether this court has the authority to assume continuing jurisdiction." It was at this point that the juvenile court began an inquiry into whether Mexico or California was the more convenient forum, ultimately finding California more convenient given that minor's absence from Mexico was intended by parents to be permanent and that more relevant information regarding minor was available in California than in Mexico.

As we read this portion of the record, the juvenile court had, contrary to parents' contention, assumed emergency jurisdiction over minor pursuant to section 3424. At the hearing, the court stated as much, and then explained that the remaining issue was whether there was a basis for "continuing jurisdiction." At that point, we agree the court turned its focus to whether California, rather than Mexico, was the more appropriate forum, the inquiry described in section 3421, subdivision (a), the provision governing jurisdiction in non-emergency UCCJEA matters. At the same time, the court did not squarely address the issue of whether continuing emergency jurisdiction under section 3424 was warranted due to "the [ongoing] emergency presented by the abuse of the child, and the impossibility of returning [him] immediately to [the] parents."[4] (*In re Stephanie*

---

[3]    "When reviewing a jurisdictional order under the UCCJEA, a court of review is not bound by the trial court's findings and may independently reweigh the jurisdictional facts. [Citations.]" (*In re Marriage of Fernandez-Abin & Sanchez, supra,* 191 Cal.App.4th at p. 1042.)

[4]    Section 3421 provides in relevant part:
"(a) *Except as otherwise provided in Section 3424*, a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true:

6

*M., supra*, 7 Cal.4th at p. 312; see also *In re Angel L., supra*, 159 Cal.App.4th at p. 1139 [emergency jurisdiction may continue "as long as the risk of harm creating the emergency is ongoing"].) However, without considering the merits of the trial court's alternative analysis, we find no basis for reversal given the substantial evidence in the record supporting the court's continued exercise of emergency jurisdiction based on the continuing risks to which minor was exposed. (See *In re Marriage of Fernandez-Abin & Sanchez, supra,* 191 Cal.App.4th at p. 1042 [reviewing court may independently reweigh jurisdictional facts].) To name but a few examples, the juvenile court found as late as August 24, 2012, that returning minor to parents in Mexico would place him at substantial risk of physical or emotional harm given parents' continued refusal to acknowledge minor's developmental and behavioral concerns[5] and potential for suffering

---

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

"(2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true:

"(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

"(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

"(3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428.

"(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)." (§ 3421, subd. (a).)

[5] The record reflects that minor was described by his school's social worker as more similar to an 18-month or two-year old than a six-year old in terms of his development, and was in the bottom one percent of his peers in language and speech skills. His foster parents, while noting minor's progress during his time in their home, remained concerned with his aggressive and sometimes sexualized conduct with the other foster children.

7

further neglect or abuse if again left in the care of a person such as Mr. Ewan Brighting (with whom he re-entered the United States). In fact, the juvenile court found based on the agency's report that parents appeared unconcerned with the family's ongoing relationship with Mr. Brighting, despite, among other things, Mr. Brighting's possession of sexual images of children on his computer. In addition, minor's aunt, who had in the past been physically or mentally abusive to minor, continued to live with parents in the family home, with apparently nothing done to prevent her from further harming minor. (See *In re Nada R., supra*, 89 Cal.App.4th at pp. 1174-1175 ["The courts have interpreted 'emergency' as a situation in which a child is in immediate risk of danger if returned to a parent's care"].)

Thus, given the ongoing nature of the risks of physical and emotional harm faced by minor, we conclude the juvenile court's continued exercise of emergency jurisdiction in an effort to prevent further harm to him was appropriate and, moreover, consistent with our Legislature's intent to "afford all children found in California the protection of California's juvenile court in exigent circumstances." (*In re Angel L., supra*, 159 Cal.App.4th at p. 1138. See also *In re Jaheim B.* (2008) 169 Cal.App.4th 1343, 1351 ["Because the risk of harm creating the emergency was ongoing and [minor] could not immediately be returned to [mother], the court had subject matter jurisdiction under section 3424 to conduct the dependency proceeding and issue its jurisdictional and dispositional orders"].)

Without necessarily challenging this factual basis for the court's continued exercise of emergency jurisdiction, parents contend that "if the court fails to comply with the statutory requirements [for assuming emergency jurisdiction], then emergency orders cannot ripen into permanent jurisdiction." As such, parents reason, the juvenile court's failure in this case to meet the statutory requirement under section 3424, subdivision (c), to identify a set time limit for its exercise of emergency jurisdiction over minor caused the court's emergency jurisdiction to expire, rendering invalid all subsequent findings and orders. We again disagree, finding section 3424, subdivision (b), not subdivision (c), the applicable provision.

8

Specifically, subdivision (b) of section 3424 provides if there has been no *previous* child custody determination and a child custody proceeding *has not been commenced* in a state under sections 3421 to 3423, a "child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 3421 to 3423, inclusive." (§ 3424, subd. (b).) Further, "[i]f a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child." (*Ibid.*) To the contrary, "if there has been a *previous* child custody determination that is entitled to be enforced under the UCCJEA, or if a child custody proceeding *has been commenced* in a court in a state under sections 3421 to 3423, subdivision (c) of section 3424 states an order issued by a court of *this* state must follow the statutory requirements in subdivision (c)," including "specifying in the order a period it considers adequate for the parties to obtain an order from the family court in Mexico [or other State or foreign country]," and the requirement in subdivision (d) of "communicating immediately with the family court in Mexico to 'resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.' " (*In re Marriage of Fernandez-Abin & Sanchez, supra,* 191 Cal.App.4th at pp. 1038-1045.)

In this case, the relevant provision is thus that found in section 3424, subdivision (b), which applies where "a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under [the UCCJEA]." Undisputedly, although the agency remained in regular contact regarding this case with the appropriate Mexican authorities (including the consulate and the DIF, Mexico's child protection agency), no child custody determination was made or proceeding initiated with respect to minor in Mexico. As such, under subdivision (b), "a child custody determination made under this

9

section becomes a final determination, if it so provides," which in this case it did.[6] Further, subdivision (c)'s distinct requirement to specify in the order a termination date for the exercise of emergency jurisdiction does not apply.

Finally, in their reply brief, parents cite *In re Jorge G.* (2008) 164 Cal.App.4th 125, 132 for the following proposition: " 'The finding of an emergency is to be made only after an evidentiary hearing, although the juvenile court can detain the child before that hearing.' [Citation.] And emergency jurisdiction continues over the minor after the determination of the existence of an emergency ' "because of the emergency presented by the abuse of the child, and the impossibility of returning [him] immediately to [his] parents." ' (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1175 . . . , quoting *In re Stephanie M.* (1994) 7 Cal.4th 295, 312 . . . ].)" Assuming without deciding this requirement applies to the court's exercise of temporary emergency jurisdiction under section 3424, subdivision (b), we conclude there remains no grounds for reversal on this record. Undeniably, there has been more than one contested hearing (including the jurisdictional hearing on the section 300 petition and the combined six- and 12-month review hearing) during which the parties have presented evidence relevant to the precise issue for purposes of emergency jurisdiction of whether "[minor] is in immediate risk of danger if returned to a parent's care." (See *In re Nada R., supra*, 89 Cal.App.4th at pp. 1174-1175.) This evidence has already been described at length, and need not be rehashed. (Pages 8-10, *ante*.) Further, parents have identified no *additional* evidence outside this record that they would have offered had a separate evidentiary hearing on emergency jurisdiction been held.

Thus, for the reasons set forth above, we reject parents' jurisdictional challenge.[7]

---

[6]    The juvenile court made several final and appealable findings and orders on the record (and memorialized in writing) after the contested hearing, including that "dependency status is renewed.  The child will remain in the care and custody of the Human Services Agency.  And the Court approves continued placement in foster care. [¶] . . . [¶] . . . So the matter is continued to the previously set date of September 20."

**II. Does substantial evidence support the juvenile court's findings of reasonable services and detriment to minor?**

Finally, we turn to parents' contentions that the evidence failed to support the juvenile court's findings at the combined six- and 12-month review hearing that reasonable services were provided and that returning minor to their care would be detrimental to him. With respect to services, parents reason that not enough was done by the agency on their behalf to find an appropriate parenting class for them in Mexico. With respect to detriment, parents simply deny any substantial risk of it exists, noting their improvements in making their home safe and sanitary and in visiting with minor telephonically via Skype.

A juvenile court's evidentiary findings are generally reviewed only for substantial evidence, requiring us to consider the evidence in the light most favorable to the agency and indulge all legitimate and reasonable inferences to uphold the juvenile court's order. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762; *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1010.) However, before applying this test, we must address the agency's preliminary argument that parents' challenge to the juvenile court's six- and 12-month review order has been rendered moot by this court's June 24, 2013 decision to deny their petition for extraordinary writ challenging the juvenile court's subsequent 18-month review order. To briefly restate the relevant facts, in our earlier decision, we upheld the juvenile court's findings that parents failed to make substantial progress on their case plan and that returning minor to their care would present a substantial risk of harm to his physical or emotional well-being. In doing so, we reasoned: "First, with respect to the case plan, there is evidence in this record in the form of agency reports and testimony from social worker Pock establishing that parents failed in several significant regards to meet the court-ordered conditions for minor's return. Among other facts (which are described in much greater detail above): father had failed to regularly

---

[7] Given our conclusion that the juvenile court had emergency temporary jurisdiction to make the challenged findings and orders, we need not address parents' separate argument that the court lacked subject matter jurisdiction.

11

participate in phone visits; mother had begun family therapy with a therapist who was not adequately informed regarding minor's circumstances; sanitation and safety concerns remained with respect to parents' home; and no evidence had been provided that minor had been enrolled at a school with the capacity to provide him with much-needed speech and language services or therapy (which parents continued to deny minor needed)." (*B.J. v Superior Court* (*San Francisco Human Services Agency*), 2013 Cal.App.Unpub. LEXIS 4438, *17.)

"Next, with respect to the substantial risk of detriment to minor's safety, protection or physical or emotional well-being should he return to parents' physical custody, there is ample evidence that parents remained incapable or unwilling to address the underlying concerns that had led to his detention in the first place. For example, as set forth in reports and testimony from minor's case workers and professional service-providers, parents continued to be uncooperative or mistrustful of those involved in minor's case and to deny his abuse or need for therapy and special education programs. Parents also remained unwilling to agree to maintain a relationship with minor's foster family and, at the same time, to protect or isolate minor from Brighting (who they continued to defend and rely on). Parents' conduct in these regards runs contrary to the well-supported opinions of Drs. Coffino and Lieberman that minor's well-being required that he continue receiving services and therapy and maintaining nurturing, stable and loving relationships, whether he stay here or return to Mexico." (*B.J. v Superior Court* (*San Francisco Human Services Agency*), 2013 Cal.App.Unpub. LEXIS 4438, at pp. *17-*18.)

Given our affirmance of the juvenile court's findings and order following the 18-month review to terminate reunification services and to proceed with a permanent plan for minor due to parents' subpar case plan performance and the continued substantial risk of harm facing minor if returned, we agree with the agency that parents' challenge to the court's findings with respect to services and detriment at the time of the six- and 12-month review is moot. Simply put, there is no effective relief this court could grant parents that has not already been granted by the juvenile court. (*In re Jessica K.* (2000)

12

79 Cal.App.4th 1313, 1315-1316 ["When no effective relief can be granted, an appeal is moot and will be dismissed"].) After receiving six *additional* months of services, such that the 18-month statutory limit on services was met (Welf. & Inst. § 361.5), services have now finally been terminated. Moreover, as the juvenile court found and we affirmed, after those additional months of services, minor *still* faced a significant risk of harm to his physical and emotional well-being if returned, such that proceeding with a permanent plan, rather than returning him to parents, was in his best interest.

While parents counter that their appeal is not moot because the error in failing to take reasonable efforts to find them a parenting class in Mexico "infect[ed] the outcome of [subsequent proceedings]" (*In re Joshua C*. (1994) 24 Cal.App.4th 1544, 1547), as our decision to deny their writ petition reflects, their shortcomings in meeting the case plan requirements extended far beyond the parenting class component, such that, even if more had been done in that regard, the record would nonetheless more than support the juvenile court's finding of reasonable services and subsequent termination of services. These shortcomings, set forth more fully above, include father's failure to regularly participate in visitation, both parents' unwillingness to adequately communicate with and otherwise cooperate with its service providers and minor's foster family, lingering sanitation and safety concerns with respect to their home, and their failure to enroll minor in an appropriate school despite repeated agency requests to do so.[8] Indeed, the "standard is not whether the services provided were the best that might have been provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R*. (1991) 2 Cal.App.4th 538, 547.) We are quite confident that, in this case, the appropriate standard with respect to services has been met. And moreover, given parents' inadequate progress in addressing the underlying issues that led to these proceedings in the first place (most notably, the issues surrounding their continuing trust

---

[8] Parents' argument also ignores the agency's willingness to accept their participation in family therapy in lieu of a parenting class, which mother had in fact begun. As the court noted, because mother nonetheless refused to consent to the therapist's sharing of information with the agency, the agency was left unable to assess her progress.

of and relationship with Mr. Brighting), we are likewise confident that the standard applied in finding a continued risk of detriment to minor has been met.

Finally, we note there is no significant issue of public interest or continuing interest that would otherwise warrant our consideration of this appeal. Parents raise only sufficiency of the evidence arguments based on the facts of this case. (Cf. *In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404 ["a reviewing court may exercise its inherent discretion to resolve an issue rendered moot by subsequent events if the question to be decided is of continuing public importance and is a question capable of repetition, yet evading review"]; *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2005) 126 Cal.App.4th 144, 150.)

Accordingly, we reject parents' appeal without further discussion, concluding our judicial resources at this point would be better spent in other matters.[9] As the California Supreme Court explains: "The Legislature has recognized that a parent who has a child removed for neglect, abuse or substantial risk thereof, in most cases should be provided with services to assist the parent in overcoming the problems that led to removal. (§ 361.5.) It has also recognized that, in order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate. [Citation.]" (*In re Marilyn H*. (1993) 5 Cal.4th 295, 308.)

---

[9]     Regarding respondent's request for judicial notice, filed August 9, 2013, we take judicial notice of the juvenile court's order dated March 28, 2013, this court's nonpublished decision in *B.J. v. Superior Court*, No. A138336, filed on June 24, 2013, and the remittitur issued by this court in Case No. A138336, on July 25, 2013. (Evid. Code, § 452.)

14

## DISPOSITION

The juvenile court's findings and order challenged herein are affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.